706 A.2d 313

COMMONWEALTH of Pennsylvania, Appellee,

v.

Josoph HENRY, Appellant.

Supreme Court of Pennsylvania.

Submitted May 13, 1997.

Decided Dec. 23, 1997.

Reargument Denied April 6, 1998.

348

350

352

354

Billy H. Nolas, Philadelphia, for J. Henry.

John Morganelli, Easton, Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

In this capital case, Josoph Henry (Henry) appeals pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.* (PCRA), from the Order of the Court of Common Pleas of Northampton County (PCRA Court), which denied his petition for relief. We affirm.

## FACTS AND PROCEDURAL HISTORY

Henry, a student at Lehigh University, burglarized the dormitory room of fellow student Jeanne Ann Clery (Clery) in the early morning hours of April 5, 1986. Clery, who was asleep in the room, was awakened during the burglary. To prevent her from identifying him, Henry began a brutal assault on Clery. He slashed her neck repeatedly with broken glass, bit her face and breasts, beat her face and body, raped her, sodomized her, and ultimately strangled her to death. Later, he confessed the murder to friends, who informed the police.

At trial, privately retained counsel, J. Michael Farrell, Esquire, represented Henry. Henry admitted to the savage attack and murder, and he made an attempt to raise the insanity defense.[1] However, the trial court granted the Commonwealth's demurrer and removed that defense from the jury's consideration. On April 25, 1987, the jury found Henry guilty of first degree murder, rape, involuntary deviate sexual

---

1. By raising an insanity defense, a defendant is seeking one of two verdicts: not guilty by reason of insanity, or guilty but mentally ill. 18 Pa.C.S. § 314; 18 Pa.C.S. § 315. For a discussion of the insanity defense and its consequences, *see Commonwealth v. Reilly,* 519 Pa. 550, 549 A.2d 503 (1988); *Commonwealth v. Sohmer,* 519 Pa. 200, 546 A.2d 601 (1988).

intercourse, indecent assault, burglary, theft, robbery, and aggravated assault. After a penalty hearing, the jury returned a sentence of death. This Court affirmed the judgment of sentence on direct appeal, and the United States Supreme Court denied certiorari. *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929 (1990), *cert. denied*, 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991).

On March 27, 1995, shortly before his scheduled execution, Henry filed a petition to stay the execution so that he could seek relief pursuant to the PCRA.[2] The PCRA court granted the stay and appointed Brian Monahan, Esquire, and Dwight Danser, Esquire, of the Northampton County Public Defender's Office to file a PCRA petition on Henry's behalf. The court held four days of hearings on the PCRA petition, during which time Henry and the Commonwealth presented several witnesses.[3] By Order dated January 31, 1996, the PCRA court denied Henry's petition for relief.

Henry then appealed to this Court. *See* 42 Pa.C.S. § 722(4) and 42 Pa.C.S. § 9546(d) (Supreme Court has exclusive jurisdiction of appeals from final orders denying post-conviction relief in capital cases). After perfecting his appeal, Henry petitioned this Court to relieve the Northampton County Public Defender's Office so privately retained counsel, Billy Nolas, Esquire, and his associate Robert B. Dunham, Esquire, both presently with the Center for Legal Education, Advocacy & Defense Assistance, could represent him exclusively. By Order dated December 20, 1996, we granted Henry's request.

## DISCUSSION

Henry raises numerous claims for relief, which we are separating into four general categories: PCRA court error,

2. The stay petition was prepared by attorneys from the Pennsylvania Capital Case Resource Center, which the PCRA court described as "a federally funded agency whose mission is to review state death sentences." PCRA court slip. op. at 3 n. 4.

3. At the hearing, Billy Nolas, Esquire, an attorney then with the Pennsylvania Capital Case Resource Center, and Yvonne Bradley, Esquire, an attorney with the Federal Habeas Corpus Unit, entered appearances for Henry.

prosecutorial misconduct, trial court error, and ineffective assistance of counsel. We will address his arguments in that order.[4]

### Alleged PCRA Court Error

Henry claims that he did not receive a full and fair evidentiary hearing from the PCRA court. Specifically, he claims that the PCRA court erred in denying his request to call Dr. Dennis Asen and Dr. Isidore Mihalakis as defense witnesses. At trial, Dr. Asen testified as a bite-mark expert for the Commonwealth and Dr. Mihalakis testified as an expert pathologist for the Commonwealth. Henry attempted to call these witnesses at the PCRA hearing to demonstrate that their testimony at trial was "false, baseless and misleading," and should have been "excluded or devastatingly impeached at trial...." Brief of Appellant at 16. Thus, Henry called these witnesses for the purpose of challenging the admissibility and credibility of their trial testimony. He asks our Court to remand this case to the PCRA court so his counsel can examine Dr. Asen and Dr. Mihalakis. We decline to do so.

On direct appeal, this Court reviewed Henry's claims concerning the admissibility of the disputed testimony and

4. Henry's brief contains a section entitled "Introduction, Statement of the Case and Summary of Argument", which blends together the factual and procedural history of the case with a summary of Henry's arguments for relief. Brief of Appellant at 4–12. This section violates several Rules of Appellate Procedure. *See* Pa.R.A.P. 2111(a) (sections of the appellant's brief shall be separately and distinctively entitled); Pa.R.A.P. 2117(a)(1) (statement of the case shall contain a statement of the form of action, followed by a brief procedural history of the case); Pa.R.A.P. 2117(a)(3) (statement of the case shall contain the names of the judges whose determinations are to be reviewed); Pa.R.A.P. 2117(a)(4) (statement of the case shall contain a closely condensed chronological statement of all necessary facts); Pa.R.A.P. 2117(b) (statement of the case shall not contain any argument, and appellant has the responsibility to include a balanced presentation of the history of the proceedings and the contentions of the parties); Pa.R.A.P. 2117(c) (statement of the case shall contain a statement of the place where issues were raised or preserved); Pa.R.A.P. 2118 (summary of the argument shall be concise, never to exceed two pages). Although counsel's disregard for the Rules does not preclude our review here, we remind counsel that appellate review is best served when the parties comply with the Rules of Appellate Procedure.

found them to be without merit. *Henry*, 524 Pa. at 146–47, 151 n. 6, 569 A.2d at 934–35, 937 n. 6. Therefore, Henry's challenges to the admissibility of the trial testimony of Dr. Asen and Dr. Mihalakis are not cognizable under the PCRA because they were previously litigated. 42 Pa.C.S. § 9543(a)(3); 42 Pa.C.S. § 9544(a)(2). Additionally, to the extent that Henry sought to examine Dr. Asen and Dr. Mihalakis to demonstrate that trial counsel's cross-examination of these witnesses was ineffective, the PCRA court did not err in precluding the testimony. The admissibility of evidence is vested in the sound discretion of the hearing court and an appellate court may reverse only where there is an abuse of that discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). The PCRA court heard four days of testimony and permitted Henry to present many witnesses, including Dr. Norman Sperber, who rebutted the trial testimony of Dr. Asen, and Dr. Jonathan Arden, who rebutted the trial testimony of Dr. Mihalakis. The testimony of Dr. Sperber and Dr. Arden provided the PCRA court with sufficient information to evaluate Henry's claim of ineffectiveness, and we find no abuse of discretion in the PCRA court's decision to preclude the examinations of Dr. Asen and Dr. Mihalakis. *Claypool.*

■ Henry next argues that the PCRA court abused its discretion in denying his request for a continuance to present the testimony of his expert psychiatrist, Dr. Alec Whyte. He claims that we should remand this case to the PCRA court so Dr. Whyte can testify. We disagree.

■ The decision to grant or deny a request for a continuance is within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of that discretion. *Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96 (1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997); *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994). Before seeking a continuance for Dr. Whyte's testimony, Henry presented the testimony of Dr. Barry Crown, his expert psychologist. Dr. Crown testified extensively concern-

ing Henry's alleged psychological problems, including difficulties with his birthing process, his childhood experiences, his purported brain damage, the nature of neuropsychological testing, and the lack of such testing by Henry's defense psychiatrist at trial. Henry then sought a continuance because Dr. Whyte was not available to testify.

In denying the continuance, the PCRA court noted that the parties had been aware of the hearing date for quite some time. In fact, our review of the PCRA docket shows that on December 4, 1995, nearly six weeks before the hearing, the PCRA court entered an Order scheduling the hearing for January 16, 1996. The PCRA court also rejected counsel's claim that inclement weather prohibited Dr. Whyte's attendance, noting that numerous other witnesses from out-of-state could attend the hearing. Moreover, it does not appear that Dr. Whyte's testimony would have been significantly different from Dr. Crown's testimony. Henry's own counsel characterized Dr. Whyte's conclusions as "similar to those of Doctor Crown", and stated that Dr. Whyte "may be deemed by the court to be redundant." Notes of Testimony, January 18, 1996 at 185, 191. The trial court did not abuse its discretion in denying Henry's request for a continuance and no relief is due. *See Commonwealth v. Howard*, 466 Pa. 445, 353 A.2d 438 (1976) (a continuance is properly denied where proposed testimony from an absent witness is cumulative or available from another source).

Next, Henry claims that the PCRA court erred when it permitted former District Attorney Richard Pepper to remain in the courtroom and confer with the prosecution while defense witnesses testified. Pepper was one of the prosecutors for Henry's trial in 1987. The Commonwealth called Pepper as a fact witness at the PCRA hearing to rebut the testimony of defense witnesses. Henry claims that Pepper's presence in the courtroom violated the Rules of Professional Conduct, and Pepper should have been sequestered. We disagree.

Rule of Professional Conduct 3.7(a) generally prohibits a lawyer from acting as both advocate and witness in the same trial, and provides as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Rule of Professional Conduct 3.7(a). Contrary to Henry's assertion, Pepper did not act as an advocate at the PCRA hearing. He did not question witnesses, present evidence, or argue on behalf of the prosecution. Although Pepper conferred with the prosecution during the hearing, Henry provides no authority that bars the prosecution from consulting with its witnesses during a hearing. Thus, this issue is without merit.

 Henry argues that the trial court should have sequestered Pepper while Henry's fact witnesses were testifying. The purpose of sequestration is to prevent a witness from shaping his testimony with evidence presented by other witnesses. *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). However,

[i]n nearly every criminal case, one side or the other would like to have some or all of the witnesses of his opponent sequestered. The lack of adequate room space, the long delays which would inevitably be caused by sequestration and other practical considerations, make sequestration of witnesses ordinarily impractical or inadvisable, except in unusual circumstances. For the foregoing reasons the question of sequestration of witnesses is left largely to the discretion of the trial Judge and his decision thereon will be reversed only for a clear abuse of discretion.

*Commonwealth v. Kravitz*, 400 Pa. 198, 217–18, 161 A.2d 861, 870 (1960), *cert. denied*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961) (footnote omitted). A request for sequestration of a witness should be specific and should be supported by a showing that the interests of justice require it. *Kravitz.*

Here, Henry fails to cite instances in the record where Pepper may arguably have tailored his testimony. He also fails to explain how the PCRA court's denial of his request for sequestration contravened the interests of justice. This claim warrants no further review.

### Prosecutorial Misconduct

■ Next, Henry argues that the Commonwealth's experts, Dr. Asen and Dr. Mihalakis provided "false and misleading" testimony at trial. He claims this testimony violated his right to due process. In support of his claim, he cites numerous cases where the United States Supreme Court has held that a violation of the Fourteenth Amendment's due process clause occurs when a state obtains a criminal conviction through the knowing use of false evidence. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecution falsely claimed that it did not offer a witness leniency for his testimony); *Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967) (prosecution knowingly presented an expert who falsely identified paint on shorts as blood); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (prosecution failed to correct witness' false testimony that he had not been offered leniency for his testimony); *Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957) (prosecution knowingly elicited false testimony from a witness); *Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942) (prosecution knowingly presented perjured testimony); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (prosecution knowingly presented perjured testimony).

The present case, however, does not involve the knowing use of false evidence. The foundation for Henry's claim that the Commonwealth presented false evidence is the testimony of his experts, Dr. Arden and Dr. Sperber, at the PCRA hearing. These experts disputed the validity of the scientific theories on which Dr. Asen and Dr. Mihalakis based their testimony. Simply because Henry's experts disagree with the Commonwealth's experts does not mean that the Common-

wealth knowingly presented false evidence in violation of Henry's due process rights. This claim warrants no relief.

■ In a similar vein, Henry claims the Commonwealth knowingly presented false testimony at trial through Marvin Brunson, who was Henry's cellmate in prison. At trial, Brunson testified for the Commonwealth that Henry confessed to burglarizing Clery's dormitory room, assaulting her, and strangling her to death. However, in an affidavit attached to Henry's PCRA petition, Brunson recanted his trial testimony. On direct examination at the PCRA hearing, Brunson testified that he fabricated the account of Brunson's confession because he expected to receive leniency from the Commonwealth for charges pending against him. Henry now claims that Brunson's recantation demonstrates that the Commonwealth violated his due process rights by knowingly presenting false testimony at trial.

■ Recantation testimony is extremely unreliable. *Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541 (1995); *Commonwealth v. Nelson*, 484 Pa. 11, 398 A.2d 636 (1979); *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970). When the recantation involves an admission of perjury, it is the least reliable form of proof. *Coleman*. The trial court has the responsibility of judging the credibility of the recantation. *Nelson*. Unless the trial court is satisfied that the recantation is true, it should deny a new trial. *Nelson; Coleman*. An appellate court may not disturb the trial court's determination absent a clear abuse of discretion. *Nelson*.

In the present case, the PCRA court found Brunson's recantation to be equivocal and incredible. The court explained that "Brunson stated that some of his trial testimony had been true, and some false. He appeared to have difficulty discerning which part of his testimony was false." PCRA court slip op. at 70–71. The PCRA court concluded that, "having heard Brunson at the PCRA hearing, [the court] cannot find his hearing testimony to be credible." *Id.* at 84. Based on the record before us, we find no abuse of discretion in the PCRA court's credibility determination. *Nelson*. Be-

cause Brunson's recantation was not credible, Henry's due process claim fails.

Henry claims that the Commonwealth violated his Sixth Amendment right to counsel when Brunson, allegedly acting as an agent of the Commonwealth, solicited information from him while they were incarcerated together.[5] He relies on *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and its progeny, which prohibit the government from deliberately eliciting incriminating statements from an accused after his Sixth Amendment right to counsel has attached. *See Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Commonwealth v. Moose*, 529 Pa. 218, 602 A.2d 1265 (1992).

Henry first raised this claim in a pre-trial motion to suppress his statements. At a hearing on the motion, Brunson denied that the police instructed him to elicit incriminating statements from Henry. The suppression court subsequently denied Henry's motion. Henry raised this issue again in post-trial motions, which the trial court denied. On direct appeal, this Court rejected Henry's claim based on the trial court's opinion. *Henry*, 524 Pa. at 147 n. 3, 569 A.2d at 935 n. 3. To avoid the bar of previous litigation, 42 Pa.C.S. § 9543(a)(3), Henry relies on Brunson's recantation testimony before the PCRA court where Brunson alleged that police told him to "pump" Henry for information about the murder. However, as previously discussed, the PCRA court found Brunson's recantation to be unreliable. Accordingly, Henry's *Massiah* claim is without merit.

### Trial Court Error

Henry argues that the trial court erred when it excluded evidence concerning a videotape of an electroenceph-

---

5. Henry also states that the Commonwealth's actions violated his rights under the Fifth Amendment, the Eighth Amendment and the Fourteenth Amendment. However, Henry provides neither authority nor argument for these claims, and thus, we will not address them.

alogram (EEG) neurological test showing Henry's reaction to the ingestion of alcohol; the testimony of a professor and a director of prison religious activities; Henry's family medical records; Henry's high school and college records; and Henry's father's history of psychotic and violent reaction to alcohol. Henry acknowledges that this Court addressed and denied these very same claims on direct appeal. *See Henry*, 524 Pa. at 150–51, 569 A.2d at 936. Nonetheless, he asks for "reconsideration" of the direct appeal decision. Contrary to Henry's understanding, "the purpose of the PCRA is not to provide a defendant with a means of relitigating the merits of issues long since decided on direct appeal." *Commonwealth v. Buehl*, 540 Pa. 493, 500, 658 A.2d 771, 775 (1995). Because Henry's claims have been previously litigated, 42 Pa.C.S. § 9544(a)(2), they are not cognizable under the PCRA, 42 Pa.C.S. § 9543(a)(3), and we will not address them again.

██ Henry claims the trial court erred in refusing his request to instruct the jury that a sentence of life imprisonment means life imprisonment without the possibility of parole. At the time of Henry's trial in 1987, the law of this Commonwealth prohibited a trial court from giving the jury such an instruction. *See Commonwealth v. Strong*, 522 Pa. 445, 563 A.2d 479 (1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990) (citing *Commonwealth v. Johnson*, 368 Pa. 139, 81 A.2d 569 (1951)). Therefore, when Henry raised this claim on direct appeal, we rejected it based on *Strong*. *Henry*, 524 Pa. at 160, 569 A.2d at 941. After Henry's direct appeal, the United States Supreme Court issued *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). In *Simmons*, a plurality of the Court held that where the defendant's future dangerousness is at issue and the defendant makes a specific request, the jury must be informed what the term "life sentence" means.[6]

6. Although the plurality opinion in *Simmons* only garnered four votes, a three Justice concurring opinion concluded that "[w]here the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury—by either argument or instruction—that he is parole ineligi-

However, in *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877 (1995), *cert. denied*, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995), this Court held that *Simmons* announced a new rule of law, and therefore, shall not be applied retroactively to a case that has exhausted its direct appeal but is pending in a collateral proceeding. *See also Commonwealth v. Szuchon*, 548 Pa. 37, 693 A.2d 959, *cert. denied*, —— U.S. ——, 118 S.Ct. 224, 139 L.Ed.2d 157 (1997) (*Simmons* cannot apply retroactively to afford PCRA relief); *but see Banks v. Horn*, 928 F.Supp. 512 (M.D.Pa.1996) (*Simmons* may apply retroactively). Recently, the Supreme Court addressed the retroactivity of *Simmons* in the context of a federal habeas claim and concluded that, because *Simmons* announced a new rule, it is "inapplicable to an already final death sentence." *O'Dell v. Netherland*, —— U.S. ——, ——, 117 S.Ct. 1969, 1971, 138 L.Ed.2d 351 (1997). Here, Henry's death sentence had been final for more than four years when *Simmons* was decided. Accordingly, *Simmons* is inapplicable to the present PCRA proceeding.[7] *O'Dell; Christy*.

### Ineffective Assistance of Counsel

Henry alleges several instances of ineffective assistance of counsel throughout this case. Under the PCRA, a claim of ineffective assistance of counsel provides a basis for relief only when it "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). To establish such a claim, a defendant must demonstrate that (1)

ble." *Simmons*, 512 U.S. at 178, 114 S.Ct. at 2201 (O'Connor, J., concurring).

7. Even if *Simmons* were applicable here, Henry would not be entitled to relief. As the PCRA court explained, "[Henry] has failed to demonstrate that future conduct became a real issue at his trial.... Our review discloses no ready reference to future criminal activity made by the Commonwealth." PCRA court slip. op. at 44. Because his future dangerousness was not at issue, Henry's *Simmons* claim is without merit. *Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152, *cert. denied*, —— U.S. ——, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997) (*Simmons* does not apply where future dangerousness is not at issue); *Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997) (same).

the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Douglas,* 537 Pa. 588, 645 A.2d 226 (1994) (citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987)). We presume that counsel was effective and the defendant has the burden of proving otherwise. *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993). Counsel cannot be considered ineffective for failing to raise a meritless claim. *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994), *cert. denied,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995). Additionally, a defendant cannot obtain post-conviction review of previously litigated claims by alleging ineffective assistance of counsel and presenting new theories of relief. *Id.*

■ Henry claims that trial counsel was ineffective during voir dire in failing to properly question prospective jurors. Specifically, he argues that counsel did not investigate the potential racial bias against his client, a black male charged with killing a white female. In support of his argument, Henry relies on *Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), where the United States Supreme Court held that a defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. *See also Commonwealth v. Glaspy,* 532 Pa. 572, 616 A.2d 1359 (1992) (trial court abused its discretion by precluding defense counsel from questioning prospective jurors on racial bias); *Commonwealth v. Terry,* 513 Pa. 381, 521 A.2d 398, *cert. denied,* 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987) (*Turner* requires voir dire on racial bias in interracial capital murder case); *Commonwealth v. Christian,* 480 Pa. 131, 389 A.2d 545 (1978) (reversible error for trial court to refuse defendant's inquiry concerning racial bias on voir dire in interracial murder case); *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d 462 (1975) (in certain circumstances, a defendant has the right to ask about possible racial bias of potential jurors).

Contrary to Henry's assertion, counsel's decision did not amount to ineffective assistance. The *Turner* Court specifically noted that the decision to request voir dire on the subject of racial prejudice is reserved for defense counsel. This Court has recognized that there may be legitimate reasons for not pursuing the issue of racial bias in every interracial crime. In *Commonwealth v. Richardson*, 504 Pa. 358, 473 A.2d 1361 (1984), we explained that raising the issue of racial bias may have the adverse effect of emphasizing racial stereotypes by focusing the jurors' attentions on skin color instead of the guilt or innocence of the accused. *See also Commonwealth v. Griffin*, 537 Pa. 447, 644 A.2d 1167 (1994) (counsel had a reasonable basis for not pursuing questions of racial bias during voir dire even though one juror volunteered his prejudice against blacks).

In this case, trial counsel testified at the PCRA hearing that he remembered questioning some prospective jurors concerning racial bias. Although he could not recall why he did not question all of the prospective jurors on racial bias, at the time of trial, he believed that the jurors he selected were acceptable for his client's case. Our review of the record indicates that of the twelve jurors seated on the jury, three were asked race-related questions.[8] The remaining nine were not asked such question but were acceptable for various other reasons, including their willingness to entertain evidence concerning an insanity defense, the effects of alcohol consumption, and psychiatric issues; and their ability to presume Henry innocent and return a life sentence if the evidence warranted.[9] Therefore,

8. First, trial counsel asked Juror No. 118 if he ever had any experiences with black people that would prevent him from rendering a fair and impartial verdict, to which the juror responded in the negative. N.T. April 8, 1987 at 59. Second, he asked Juror No. 167 if she worked with any black persons and she responded that she worked with one. N.T. April 9, 1987 at 224. Counsel further asked if the juror was friendly with that person, to which she answered in the affirmative. *Id.* Third, the prosecutor, asked Juror No. 56 if she would have any difficulty sitting in this case considering that the defendant is black and the victim is white, and she answered in the negative. N.T. April 10, 1987 (Vol.II) at 265.

9. *See* N.T. April 8, 1987 at 90–106; N.T. April 9, 1987 at 43–67, 177–195; N.T. April 10, 1987 (Vol.II) at 139–158, 187–207, 277–296; N.T.

we cannot say that counsel pursued an unreasonable course during voir dire. Additionally, Henry has not proved that, but for counsel's tactics, the outcome of his trial would have been different. He does not allege that a racially biased juror was seated or that racial bias entered into the jury's deliberations. This Court reviewed the record on direct appeal pursuant to our statutory duty and found "no basis for belief that the sentence of death was the 'product of passion, prejudice or any other arbitrary factor.' " *Henry*, 524 Pa. at 161, 569 A.2d at 941–42 (quoting 42 Pa.C.S § 9711(h)(3)(i)). Accordingly, we find no merit in Henry's claim that his trial counsel was ineffective. *Douglas.*

 Next, Henry argues that trial counsel was ineffective for failing to adequately examine certain prospective jurors concerning their possible prejudices against the defense of insanity. The record belies Henry's underlying claim. Counsel specifically asked ten of the twelve jurors their opinions concerning the defense of insanity.[10] Counsel asked the remaining two jurors their opinions concerning psychiatrists and psychiatric testimony.[11] Moreover, even if counsel had failed to examine prospective jurors on this issue, Henry fails to articulate how such an omission would have prejudiced him when the trial court removed the defense of insanity from the jury's consideration. Thus, we find Henry's ineffectiveness claim devoid of merit.

 Henry asserts that trial counsel was ineffective for failing to life-qualify the jury properly. The term "life-qualify" refers to the process in which counsel identifies and excludes those prospective jurors who would be unable to

April 13, 1987 at 59–84, 208–230. Concerning Juror No. 117, Henry raised the failure to race qualify him on direct appeal and this Court rejected the claim. *Henry*, 524 Pa. at 147 n. 3, 569 A.2d at 935 n. 3. Thus, any claim concerning that juror's potential racial bias has been previously litigated and is not cognizable under the PCRA. 42 Pa.C.S. § 9543(a)(3).

**10.** N.T. April 8, 1987 at 18–20, 56–58, 100; N.T. April 9, 1987 at 56, 223; N.T. April 10, 1987 (Vol.II) at 148, 199, 286; N.T. April 13, 1987 at 66–67, 223.

**11.** N.T. April 9, 1987 at 186–87; N.T. April 10, 1987 (Vol.II) at 268.

consider a sentence of life imprisonment for a conviction of first degree murder. *See Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). In *Morgan*, the United States Supreme Court held that a defendant is entitled to life-qualify a jury if he so chooses. However, this Court has repeatedly held that counsel is not rendered ineffective for failing to life-qualify a jury. *Commonwealth v. Lark*, 548 Pa. 441, 698 A.2d 43 (1997); *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997); *Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199 (1994); *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). As we stated in *Jermyn*,

> The mere fact that counsel may not have posed the specific question as to whether a prospective juror would vote for a sentence of life imprisonment in an appropriate case does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected. Such a talismanic requirement would clearly place form above substance.

*Id.* at 488, 533 A.2d at 87.

Our review of the record reveals that trial counsel did life-qualify eleven of the twelve jurors seated for Henry's trial.[12] Although the remaining juror was not specifically life-qualified, she said that she could be fair and impartial and would follow the court's instructions. N.T. April 9, 1987 at 225–26. Henry's claim that counsel failed to obtain a fair and impartial jury is groundless. *See Commonwealth v. Cox*, 546 Pa. 515, 686 A.2d 1279 (1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 567, 139 L.Ed.2d 407 (1997), (counsel was not ineffective for failing to life-qualify jurors where jurors assured the court that they would follow the law and the court's instructions).

 Henry alleges that trial counsel was ineffective for failing to question jurors during voir dire after he learned that some prospective jurors were discussing the case while in the jury waiting room. He claims that counsel's nonfeasance created an unacceptable risk of prejudice. We disagree.

---

12. N.T. April 8, 1987 at 22–23, 60–61, 102–03; N.T. April 9, 1987 at 61–62, 186; N.T April 10, 1987 (Vol.II) at 151, 200, 267–68, 288; N.T. April 13, 1987 at 68, 224–25.

In *Commonwealth v. Tressler*, 526 Pa. 139, 584 A.2d 930 (1990), we held that trial counsel was not ineffective for failing to pursue an analogous claim. Following the defendant's trial in *Tressler*, his counsel learned from an alternate juror that some jurors had expressed their belief that the defendant was guilty before the trial had begun. This Court held that the jurors' initial opinions before being sworn, before hearing any evidence, and before receiving instructions did not deprive the defendant of a fair and impartial jury. Thus, we concluded that trial counsel could not have been ineffective for failing to seek a new trial based on this unmeritorious issue.

In the present case, Henry does not describe the nature of the alleged discussion between prospective jurors other than to say that the "prospective jurors were talking among themselves about the case while in the jury waiting room." Brief of Appellant at 83. This alleged, nondescript conversation "about the case" presents much less of a threat to Henry's right to a fair and impartial jury than the express preconception of guilt that we *rejected* as a basis for relief in *Tressler*. Furthermore, the trial court instructed the jury here that the presumption of innocence operates "to make sure that no decision is based on an initial suspicion, initial wondering" and to "get that all out, get that all out of the way." N.T. April 15, 1987 at 16. We find no merit in Henry's claim that counsel was ineffective for failing to pursue this issue.

Henry makes several claims that he is entitled to a new trial because the Commonwealth committed various discovery violations and trial counsel was ineffective for failing to raise these violations with the trial court. Although inartfully constructed, Henry's arguments appear to seek relief separately for both the discovery violations and counsel's ineffectiveness in failing to raise them. Any arguments based on the alleged discovery violations alone, however, are waived because Henry failed to raise the issues before the trial court. 42 Pa.C.S. § 9544(b). Therefore, we will only address Henry's ineffectiveness claims.

First, Henry argues that counsel was ineffective for failing to assert at trial that the Commonwealth violated its discovery

obligations by failing to disclose the expert opinion of Dr. Asen concerning the classification of bite-marks. Prior to trial, Dr. Asen prepared a report regarding the identification of the bite-marks on Clery's body. Dr. Asen testified at trial concerning bite-mark identification and classification. Specifically, Dr. Asen testified that bite-marks could be classified as attacking, sadistic or sexual, and in his opinion the bite-marks on Clery were attacking or sadistic.

Initially, we note that Henry admitted causing the bite-marks on Clery's body. Furthermore, trial counsel filed a motion *in limine* to exclude Dr. Asen's testimony, which the trial court denied. At trial, counsel renewed his objection to Dr. Asen's testimony, and the trial court again rejected the claim. On direct appeal, Henry challenged the admissibility of Dr. Asen's bite-mark classification testimony on the basis that there is no generally accepted scientific procedure for classifying bite-marks. We rejected Henry's claim "[s]ince Dr. Asen was established as a practicing dentist who had specialized knowledge of bite mark identification, and since the jury was clearly informed of its right to accept or reject Dr. Asen's testimony...." *Henry*, 524 Pa. at 147, 569 A.2d at 934–35. Having lost the battle to exclude Dr. Asen's testimony on the grounds of scientific reliability, Henry now seeks to challenge the testimony based on counsel's ineffectiveness concerning the Commonwealth's purported discovery violations.

Pennsylvania Rule of Criminal Procedure 305 governs pre-trial discovery and provides in relevant part as follows:

(B) Disclosure by the Commonwealth.

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

. . . .

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant, which are within the possession or control of the attorney for the Commonwealth;

. . . .

(E) Remedy. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 305. In his brief to this Court, Henry admits that the Commonwealth provided him with a copy of Dr. Asen's report during pre-trial discovery proceedings. Thus, the Commonwealth has not violated the disclosure requirements of Rule 305.

█ Henry argues that Dr. Asen's testimony at trial concerning the classification of bite-marks went beyond the scope of his expert report, and trial counsel was ineffective for failing to object to the testimony on that basis. Even assuming *arguendo* that Dr. Asen's testimony went beyond the scope of his report, Henry has failed to show that he suffered prejudice. As the PCRA court aptly explained,

with or without Dr. Asen's testimony, a logical inference flows that the bites Henry inflicted were consistent with an intent to cause pain—rather than not to cause pain. It would be ludicrous, on these facts, to suggest that the bites were willingly received, and no one has offered any testimony suggesting that the perpetrator did not intend to cause pain. It was for the jury, on the record presented, accepting, ignoring, or rejecting Dr. Asen's testimony, to reach a conclusion as to whether the bites were intended to cause pain. Whether Henry's act fits into a sadistic or sexual mode, or otherwise, it is his intent to inflict pain which is the

driving demarcation of conduct which aggravates a set of facts to a level of torture.

PCRA court slip. op. at 33 (citation omitted). Because Henry has failed to demonstrate prejudice from Dr. Asen's testimony, we find no merit in Henry's claim of counsel's ineffectiveness.

 Henry further alleges that trial counsel was ineffective for failing to cross-examine Dr. Asen adequately regarding his bite-mark classification testimony. Henry claims that with proper cross-examination and/or the use of rebuttal witnesses, counsel could have discredited Dr. Asen. However, as previously discussed, Dr. Asen's testimony did not prejudice Henry within the meaning of the PCRA. Therefore, even if counsel was deficient in his attempt to discredit Dr. Asen, Henry is not entitled to relief because he suffered no prejudice from Dr. Asen's testimony. *See Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513 (1988) (defendant has the burden of proving prejudice from defense counsel's response to prosecution's scientific evidence).

 Next, Henry argues that trial counsel was ineffective for failing to object when the Commonwealth's expert, Dr. Mihalakis, testified that scrape marks on Clery's neck were consistent with someone being held "hostage" or "at bay". Henry claims that counsel should have sought to preclude the testimony based on the Commonwealth's alleged violation of Rule 305. We find no merit in this claim.

Preliminarily, we note that Henry admitted inflicting the wounds found on Clery's body, and thus, Dr. Mihalakis' testimony was merely a characterization of an uncontested fact. On direct appeal, Henry challenged the admissibility of Dr. Mihalakis' testimony on the absence of a scientific foundation and this Court rejected the claim. *Henry,* 524 Pa. at 147 n. 3, 569 A.2d at 935 n. 3.

Henry now raises counsel's ineffectiveness for failing to challenge the testimony on the basis of the Commonwealth's discovery violations. Henry admits, however, that the Commonwealth provided him with a copy of Dr. Mihalakis's expert

report before trial. Thus, there has been no violation of Rule 305. Henry argues that Dr. Mihalakis' trial testimony concerning the "hostage" or "at bay" situation went beyond the scope of his expert report, and therefore, counsel should have objected on this basis. Assuming, *arguendo*, that the testimony exceeded the scope of the report, Henry has failed to show prejudice from the admission of the testimony. In addressing this issue, the PCRA court stated the following:

[T]he overwhelming evidence discloses that Henry, while burglarizing the victim's college dormitory room, bit, beat, cut, raped, sodomized and strangled the victim, ultimately to keep her quiet from exposing his felonious conduct. The existence of this evidence challenges any contention that Dr. Mihalakis's conclusions, whether or not based on scientific principle, was necessary to lead the jury to a guilty verdict and later a finding of the aggravating circumstance of torture.

The court questions what difference a jury would find if a victim of such an atrocious assault was able to resist; or whether the perpetrator holds his victim "at bay" or as "hostage" for a period of time....

... On this record, the presence or absence of Dr. Mihalakis's testimony could hardly affect the jury's finding that Henry specifically intended to kill the victim.

PCRA court slip. op. at 29. We agree with the PCRA court, and accordingly, we find no merit in Henry's claim of ineffectiveness.

■ Henry asserts that trial counsel was ineffective for failing to cross-examine Dr. Mihalakis adequately concerning his "hostage" or "at bay" testimony and for failing to present an expert witness to rebut Dr. Mihalakis' testimony. Assuming, *arguendo*, that counsel's cross-examination was deficient and that with reasonable diligence counsel could have obtained an expert who would have rebutted Dr. Mihalakis' testimony, Henry is still not entitled to relief because, as discussed above, he has not shown that Dr. Mihalakis' testimony prejudiced him. Without a showing of prejudice, trial counsel cannot be

deemed ineffective for his response to the prosecution's scientific evidence. *Yarris.*

■ Henry asserts that trial counsel was ineffective for failing to object to testimony by Dr. Mihalakis, Criminalist Thomas Jensen and Coroner Joseph Reichel that the scratch marks on Clery's neck were inflicted with a piece of glass. Through preliminary hearing testimony and pre-trial reports, the Commonwealth had advanced the hypothesis that Henry inflicted the scratch marks with a slightly misshapen Slinky [13] that the police found in Clery's dorm room following the murder. The Commonwealth changed its theory after Marvin Brunson relayed Henry's confession, in which Henry told Brunson that he used a piece of glass to inflict the cuts on Clery's neck. Henry now argues that trial counsel was ineffective for not objecting to the testimony of Dr. Mihalakis, Criminalist Jensen and Coroner Reichel based on the Commonwealth's alleged violation of Rule 305 for failing to update its pre-trial reports.

Assuming *arguendo* that the Commonwealth violated the rules of discovery, we again fail to see how trial counsel's lack of an objection prejudiced Henry. Henry admitted that he inflicted the wounds on Clery's neck. Whether he did so with a Slinky, a piece of glass, or another object is of no moment. Because Henry has failed to demonstrate prejudice, we find no merit in his claim of ineffective assistance. *Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181 (1996) (a court need not address the first two prongs of the ineffectiveness standard if the defendant fails to meet the prejudice prong).

■ Further, Henry alleges that trial counsel was ineffective for failing to obtain discovery from the Commonwealth concerning its expert psychiatrist, Dr. Kenneth Kool, and its expert psychologist, Mr. Albert Levitt. Dr. Kool and Mr. Levitt testified at trial in rebuttal to Henry's psychiatric expert, Dr. John O'Brien. Henry claims that counsel's failure to obtain discovery concerning Dr. Kool and Mr. Levitt left Dr. O'Brien's testimony open to criticism by Dr. Kool and Mr.

13. A Slinky is a metallic spring-like toy.

Levitt. Although trial counsel did not obtain discovery concerning Dr. Kool and Mr. Levitt, Henry's claim of ineffectiveness nevertheless fails when evaluated under the unique circumstances of this case.

Before trial, counsel filed a notice of his intent to pursue an insanity defense. In preparing that defense, however, counsel encountered difficulty finding an expert witness who would testify that Henry was insane. Counsel consulted Dr. Robert Sadoff, a well-known forensic psychiatrist. After evaluating Henry, however, Dr. Sadoff informed counsel that Henry was not insane within the meaning of the *M'Naghten* standard at the time he killed Clery.[14] Counsel also consulted with Dr. Gerald Cooke, a noted forensic psychologist. After meeting with Henry, Dr. Cooke similarly concluded that Henry was not insane under the *M'Naghten* standard. Shortly before trial, counsel was able to obtain a report from Dr. John O'Brien, a psychiatrist, who evaluated Henry and concluded that Henry was insane under the *M'Naghten* standard. However, because of the delay in obtaining Dr. O'Brien's report, counsel was unable to comply with the trial court's discovery deadline for supplying expert reports. Despite this violation, the court permitted Henry to present Dr. O'Brien's testimony in the interest of justice.

After Dr. O'Brien testified, the court granted the Commonwealth's demurrer to the sufficiency of the evidence supporting Henry's insanity defense, thereby removing the defense of insanity from the jury's consideration. The court did permit the jury to consider Dr. O'Brien's testimony insofar as it concerned Henry's ability to form the specific intent required for first degree murder. In response, the Commonwealth sought to present the testimony of Dr. Kool and Mr. Levitt to

---

**14.** The *M'Naghten* standard has been codified as the standard for an insanity defense in Pennsylvania, and "the phrase 'legally insane' means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong." 18 Pa.C.S. § 315(b); *see also* 18 Pa.C.S. § 314(d). For a discussion of the *M'Naghten* standard, see *Reilly*.

rebut the testimony of Dr. O'Brien. Trial counsel objected on the basis that Henry had not received reports from these experts in compliance with the court's discovery schedule. In overruling the objection, the court stated:

Since I have made rulings that the defense did not comply with the Court's order, that despite such violations the interest of justice required me to permit the defense to proceed, I can't very well hold the Commonwealth responsible for not having furnished responses to discovery or determine [discovery] was incomplete. I think we have gotten to the point where I am going to exercise the same latitude I did on [the defendant's] side of the case and permit the Commonwealth to elicit this testimony even though it was not furnished during the pretrial discovery stages because the pretrial discovery stages remained incomplete at the time of the trial for reasons that the defendant also contributed to.

N.T. April 24, 1987 at 100.

On the facts of this case, we find no ineffectiveness in trial counsel's stewardship in pursuing an insanity defense. First, we note that the delay in obtaining an expert willing to support Henry's insanity defense was not due to counsel's indolence. To the contrary, counsel timely consulted two well-recognized experts, neither of whom found Henry insane. We cannot fault counsel simply because the experts he retained did not reach the conclusions his client wanted. Even though counsel obtained Dr. O'Brien's services after the court's discovery deadline, Henry suffered no prejudice from the discovery violation because the trial court permitted Dr. O'Brien to testify. Moreover, though counsel did not have the benefit of expert reports from Dr. Kool and Mr. Levitt to aid his presentation of Dr. O'Brien's testimony concerning Henry's ability to form a specific intent to kill, counsel was able to cross-examine both of these witnesses effectively. Considering the difficulty counsel faced in obtaining an expert to testify favorably for his client, we conclude that counsel provided effective assistance under the circumstances here.

■ In his next claim, Henry contends that the prosecutor improperly injected racial prejudice into the trial by suggesting that Henry was racially motivated in killing Clery and trial counsel was ineffective for failing to present evidence to rebut the prosecutor's suggestion. On direct appeal, Henry challenged the prosecutor's suggestion that the killing was racially motivated. This Court rejected Henry's claim because the prosecutor's statements were based on evidence in the record. *Henry,* 524 Pa. at 158, 569 A.2d at 940. Thus, to the extent Henry is seeking relief based solely on the prosecutor's statements, his claim has been previously litigated. 42 Pa.C.S. § 9544(a)(2).

■ To the extent that Henry is seeking relief for counsel's failure to rebut the prosecution's allegation of racial motivation, his claim is without merit. Henry argues that trial counsel should have presented testimony at trial from Henry's mother, Marie Henry, and Henry's friend, Robert Crawford, who both testified at the PCRA hearing that Henry was not biased against white people. In order to establish that counsel was ineffective for failing to call a witness, a defendant must show, in addition to meeting the general standard for an ineffectiveness claim, the following elements: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the defendant a fair trial. *Commonwealth v. Smith,* 544 Pa. 219, 675 A.2d 1221 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1090, 137 L.Ed.2d 223 (1997); *Commonwealth v. Speight,* 544 Pa. 451, 677 A.2d 317 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997). Henry, however, has not addressed this five-pronged test in his brief. This claim warrants no further review.

Henry claims that trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument. Specifically, Henry argues that the following actions by the prosecutor were improper: (1) using a timer to measure a four

minute period of silence, which is the amount of time the Commonwealth claimed that it took Henry to strangle Clery; (2) commenting that the gap in this case was between Henry's front teeth and filled with Clery's flesh; (3) stating that Henry looked into Clery's eyes as she died; (4) asserting that Clery begged for her life during the four minutes it took Henry to strangle her; and (5) referring to Henry's defense of alcohol idiosyncratic intoxication as "ridiculous". We find no merit in Henry's claims.

Our Court recently set forth the standard of review for claims of prosecutorial misconduct in closing argument as follows:

> The standard for reviewing such claims is well settled. Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. Moreover, the prosecution, similar to the defense, is accorded reasonable latitude and may employ oratorical flair arguing its version of the case to the jury. The arguments advanced must, however, be based upon matters in evidence and/or upon any legitimate inferences that can be drawn therefrom. Finally, any allegedly improper prosecutorial comments must also be examined within the context of the conduct of defense counsel.

*Jones,* 546 Pa. at 199, 683 A.2d at 1199–1200 (1996) (citations omitted).

■ This Court addressed Henry's claim concerning the prosecutor's four minute simulation on direct appeal and found it to be without merit. *Henry,* 524 Pa. at 151 n. 6, 569 A.2d at 937 n. 6. Accordingly, that claim has been previously litigated, 42 Pa.C.S. § 9544(a)(2), and will not be addressed again.

■ The prosecutor's reference to the gap in Henry's teeth being filled with Clery's flesh was a fair comment on the evidence of record. The Commonwealth introduced a mold of

Henry's teeth at trial, which matched the bite-marks on Clery's body and showed a discernable gap between two of his front teeth. Henry admitted that he was the person who inflicted the bites on Clery's body. Because the prosecutor's comments were properly based on the evidence, counsel had no basis for an objection. Counsel will never be deemed ineffective for failing to raise a meritless claim. *Peterkin.*

Similarly, the prosecutor's statements that Henry looked into Clery's eyes as she died and that Clery begged for her life were legitimate inferences drawn from the evidence at trial. Henry's attack on Clery was unmercifully violent. He bit her face and breasts, beat her face and body, sliced her neck with a piece of glass, raped her, sodomized her, and strangled her to death with his hands. It is not unreasonable to suggest that during the course of this attack Clery implored Henry to stop or that Henry looked into her eyes as he manually strangled her. Considering the undisputed brutality of the assault, which numerous Commonwealth witnesses described during trial, we do not believe the prosecutor's comments in closing argument would have had the unavoidable effect of preventing the jury from rendering a true verdict based on the evidence. *Jones.* Henry's claim that counsel was ineffective for failing to object must fail.

Finally, counsel's failure to object to the prosecutor's characterization of alcohol idiosyncratic intoxication as "ridiculous" does not warrant a new trial. A prosecutor should refrain from offering his or her opinion of the truth or falsity of the evidence presented by the accused. *Peterkin.* However, "[e]ven where the language of the prosecutor is intemperate, uncalled for and improper, a new trial is not necessarily required." *Commonwealth v. Meadows,* 534 Pa. 450, 465, 633 A.2d 1081, 1089 (1993). The prosecutor's comments must be evaluated in context. *Jones.* Here, the prosecutor was trying to discredit Henry's claim that he was suffering from alcohol idiosyncratic intoxication at the time of the murder. The prosecutor described how none of Henry's friends noticed any impairment in his faculties shortly before

the murder; he was sufficiently coherent to burglarize Clery's dorm room and consciously decide to kill her when she awoke; another friend whom he visited after the murder did not detect any sign of intoxication; and he played basketball well a few hours later. During the course of this commentary, the prosecutor referred to "this ridiculous alcohol idiosyncratic intoxication" and "this ridiculous disease". These comments do not require a new trial.

In *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28 (1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992), the prosecutor called defense counsel "stupid" and described counsel's conduct as "outrageous". We held that these disparaging comments did not prejudice the jury. In *Commonwealth v. Brawner*, 381 Pa.Super. 265, 553 A.2d 458, *appeal denied*, 522 Pa. 617, 563 A.2d 886 (1989), the Superior Court held that the prosecutor's comments that the defendant's alibi "smells to high heaven", is "rotten", "stinks", and is "obvious" did not warrant a new trial because they were not so egregious as to render the jury incapable of delivering a true verdict. Similarly, the prosecutor's references here to Henry's alleged alcohol idiosyncratic intoxication as "ridiculous" would not have formed in the minds of the jury a fixed bias and hostility toward Henry that would have prevented them from weighing the evidence objectively and rendering a true verdict. Therefore, we find no merit in Henry's allegation of counsel's ineffectiveness for failing to object.

 Henry argues that trial counsel provided ineffective assistance during the penalty phase, and based on that ineffectiveness he is entitled to relief. Specifically, he claims that counsel ineffectively failed to present a competent mental health expert, failed to call certain witnesses, failed to investigate potential mitigating circumstances, and failed to ensure that the jury verdict slip was proper. We disagree.

Henry claims that counsel was ineffective for presenting Dr. O'Brien's testimony at the penalty hearing because Dr. O'Brien failed to examine Henry adequately. According to Henry's psychological expert at the PCRA hearing, Dr. Barry

Crown, if Dr. O'Brien had properly evaluated Henry, he would have discovered that Henry had brain damage resulting from complications at birth, head injuries and substance abuse, and psychological problems from childhood sexual abuse.

Before obtaining the services of Dr. O'Brien, counsel consulted with Dr. Sadoff, a well-known psychiatrist. Counsel arranged for Dr. Sadoff to examine Henry, and he made numerous records available to Dr. Sadoff, including an EEG report, an alcohol-provoked EEG and videotape, statements from Henry's friends and acquaintances after his arrest, high school records, college records, and hospital records of Henry's father and uncle. However, Dr. Sadoff did not discover the brain damage and psychological problems that Dr. Crown alleges. Trial counsel also retained Dr. Cooke, a noted psychologist, and made the same records available to him that he had given to Dr. Sadoff. Dr. Cooke also did not diagnose the brain damage and psychological problems that Dr. Crown uncovered. Trial counsel then consulted Dr. O'Brien. In addition to supplying Dr. O'Brien with the same records he gave to Dr. Sadoff and Dr. Cooke, counsel arranged for Henry to undergo a computerized axial tomography scan and a magnetic resonance imaging scan and provided those test results to Dr. O'Brien. Again, Dr. O'Brien did not find the purported brain damage and psychological problems that Dr. Crown diagnosed.

On this record, trial counsel's presentation of Dr. O'Brien's testimony at the penalty phase did not constitute ineffective assistance. As the PCRA court stated:

> [Henry] contends that [trial counsel's] failure to find Dr. Crown or a similar witness, rendered [counsel] ineffective in his assistance in the case. The Court cannot agree. [Trial counsel's] defense effort conformed to high standards in all spheres, including his attempt to develop a mental defect defense. It is not ineffective assistance solely because one fails to do exactly what another with hindsight would have done. . . .
>
> Counsel's choice was reasonable and well planned, and failing to choose an optional course is not ineffective assis-

tance of counsel. It is folly to suggest that somewhere "out there" is exculpatory testimony such as that of Dr. Crown, an available witness unknown to defense counsel at the time of trial. To suggest otherwise would require defense counsel in every case to exhaust every expert anywhere, perhaps in the world, until counsel found the "perfect" witness. . . . The issue is whether or not counsel plotted and followed a reasonable course of action to assist his client in preparing for the trial and presenting testimony. The Court finds that he did.

PCRA court slip. op. at 59–60 (citation omitted) (footnotes omitted). We agree with the PCRA court that trial counsel followed a reasonable and prudent course. Accordingly, we find no merit in Henry's claim of ineffectiveness. *Morris* (counsel cannot be deemed ineffective for choosing one reasonable course over another).

■ Henry argues that counsel was ineffective for failing to investigate incidents of head trauma and sexual abuse from Henry's past, and for failing to call witnesses who would have testified to these incidents. Henry specifically alleges that his mother would have testified concerning his head injuries and sexual abuse, and three of his friends would have testified concerning his head injuries. We note that trial counsel called numerous lay witnesses during the penalty phase, including Henry's mother, his brother, his grandmother, his minister, his English professor, the Coordinator of Volunteer Services at Northampton County Prison, several of Henry's friends, and Henry himself. None of these witnesses mentioned anything about his head injuries or sexual abuse. Counsel had three separate doctors evaluate Henry and none of them discovered his head injuries or sexual abuse. Finally, the PCRA court found that the PCRA testimony of Henry's mother and three friends "was either cumulative or nonpersuasive in terms of the establishment of mitigating circumstances beyond those found by the jury." PCRA court slip. op. at 62. On this record, we believe counsel pursued a reasonable course and find no merit in Henry's ineffectiveness claim. *See, e.g., Commonwealth v. Appel*, 547 Pa. 171, 689

A.2d 891 (1997) (counsel will not be deemed ineffective for failing to conduct further investigation into client's competency when qualified experts and available facts show client to be competent).

■ Henry next argues that trial counsel was ineffective for failing to object to the trial court's charge and verdict slip, which, according to Henry, gave the jury members the impression that they unanimously had to find a mitigating circumstance before they could give effect to that circumstance in their sentencing decision. He claims that the United States Supreme Court's decision in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) supports his argument and requires us to grant him relief. We disagree.

"In *Mills*, the jury instructions and verdict slip utilized at trial contained specific elements of language and form that created a substantial risk of jurors being misled to believe that, unless they agreed unanimously on the existence of any given mitigating circumstance, the circumstance could not be taken into account by any of the jurors during deliberations." *Commonwealth v. Frey*, 520 Pa. 338, 346, 554 A.2d 27, 31 (1989), *cert. denied*, 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990) (citation omitted). The jury instructions and verdict slip here, however, do not contain the language or form that was cause for concern in *Mills*. Indeed, this Court reviewed jury instructions substantially similar to those here in *Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467, *cert. denied*, 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995), and *Commonwealth v. Wilson*, 538 Pa. 485, 649 A.2d 435 (1994), *cert. denied*, 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995) and found no violation of *Mills*. In *Frey*, we reviewed a verdict slip substantially similar to the slip here and concluded there was no violation of *Mills*. Despite the fact that the PCRA court relied on *Banks* and *Wilson* in rejecting Henry's claim, and the fact that both of those cases reference *Frey*, Henry has not bothered to address *Banks, Wilson, Frey*, or any other Pennsylvania case discussing this issue. This claim warrants no further review.

 Henry's final claim of ineffective assistance concerns a series of photographs depicting the wounds on Clery's body. The trial court admitted some of the photographs during the guilt phase and others during the penalty phase. At each stage, counsel objected that the photographs were inflammatory and prejudicial, but the trial court overruled the objection. Henry now asserts that counsel was ineffective for failing to ensure that this Court received those photographs on direct appeal, which denied him meaningful appellate review. This claim is without merit.

 The underlying foundation for Henry's claim of ineffectiveness is that the photographs were inadmissible because of their inflammatory and prejudicial nature. Photographs of a murder victim, however, are not *per se* inadmissible. *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305 (1996). The decision to admit such photographs is vested within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Id.* To determine whether the photographs in question are admissible, a court must undertake a two-step analysis. *Commonwealth v. Saranchak*, 544 Pa. 158, 675 A.2d 268 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997). First, the court must decide if the photographs are inflammatory. *Id.* If the court finds the photographs inflammatory, then the court must apply a balancing test to decide if the evidentiary need for the photographs clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590 (1989). When applying this two-part test, a court should be guided by the following:

A criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the

condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

*Commonwealth v. McCutchen*, 499 Pa. 597, 602, 454 A.2d 547, 549 (1982). Even where the condition of the victim's body can be described through a medical examiner's testimony, the testimony does not obviate the admissibility of the photographs. *Auker; Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994).

In its opinion denying Henry's post-trial motions, the trial court described the admission of the contested photographs during the guilt phase as follows:

Of the black and white photographs admitted, only Nos. 26 and 30 depicted a side view of the victim's bite-marked cheek and a frontal view of her scratched neck. The other photographs depicted bruises on her legs and feet.

We have reviewed and adopt our trial court ruling that none of the photographs were gruesome because they were taken in such a manner that they could be photos of wounds from a live person as well as a deceased person. In addition, each of the photographs was necessary to establish the defendant's requisite intent for a first degree murder conviction and also substantiated the other charges of assault, rape and sodomy. Accordingly, we find that the photographs possessed essential evidentiary value sufficient to outweigh the possibility that they would inflame the jury.

Trial court slip. op. at 13–14. In describing the admission of the penalty phase photographs, the court stated:

As an aid to the testimony of Dr. Mihalakis and Lieutenant Shupp in describing the nature of the injuries they observed, the court allowed into evidence four photographs of the victim depicting bite marks on her cheeks and breast, lacerations throughout the neck area, bruises about the neck, legs and vaginal-anal areas. The photographs of the victim's injuries in the penalty phase were probative of the vicious nature and extent of the injuries the defendant inflicted upon the victim beyond the amount necessary to

kill her. The judge promptly issued cautionary instructions when the photographs were first circulated and then again prior to the jury's deliberations. We find that the trial court's instructions cured any possible inflammatory effect the photographs may have had and that their probative value concerning the defendant's intent to subject the victim to torture required their submission.

Trial court slip. op. at 33–34 (citation omitted).

We have reviewed all of the photographs in question and the trial court's cautionary instructions at the guilt and penalty phases, and we agree that the admission of the photographs was proper. *See Faulkner* (graphic photographs were admissible where trial court gave cautionary instructions); *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367, *cert. denied*, 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991) (photographs clearly depicting the victim's slashed throat, open eye and other head injuries were admissible); *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989) (color photographs showing strangulation area of victim's neck, defensive wounds on victim's hands, and bite-marks on left arm and both legs were admissible); *compare, Commonwealth v. Chacko*, 480 Pa. 504, 506, 391 A.2d 999, 1000 (1978) (photographs of victim's body in undergarments, "splattered with blood", and depicting a gaping neck wound were inadmissible). Because the admission of the photographs was proper, Henry's claim of ineffective assistance is without merit.

## CONCLUSION

After reviewing each of Henry's claims, we find no basis on which to grant him relief. Accordingly, we affirm the Order of the PCRA court.