J-S04006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RASHEEN NIFAS | : | |
| | : | |
| Appellant | : | No. 1643 EDA 2021 |

Appeal from the PCRA Order Entered August 2, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1004371-1991

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED APRIL 11, 2022**

Appellant, Rasheen Nifas, appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we vacate the order denying relief, and remand for an evidentiary hearing.

> On February 18, 1993, a jury convicted Appellant of first-degree murder and related offenses.  The trial court subsequently sentenced Appellant on October 4, 1994, to life imprisonment, with concurrent terms of incarceration for the remaining convictions.  Appellant timely appealed, and this Court affirmed his judgment of sentence on March 29, 1996.  Appellant did not file a petition for allowance of appeal to our Supreme Court.
>
> Appellant timely filed his first PCRA petition *pro se* on November 18, 1996.  The PCRA court appointed counsel, who subsequently filed a "no-merit" letter and petition to withdraw.  On September 24, 1999, the PCRA court ultimately issued notice of its intent to dismiss Appellant's petition without a hearing.  Appellant did not respond, and the PCRA court dismissed his petition on October 26,

_____

[*] Former Justice specially assigned to the Superior Court.

> 1999. Appellant appealed to this Court; however, his appeal was dismissed on August 10, 2000, for failure to file a brief. Appellant filed a petition for reconsideration, which this Court denied.

***Commonwealth v. Nifas***, No. 3395 EDA 2016, unpublished memorandum at 1 (Pa. Super. filed Oct. 25, 2017). Appellant did not seek further review with our Supreme Court.

Appellant subsequently filed his second "PCRA petition *pro se* on May 20, 2015." ***Id.*** In that petition, filed nineteen years after his judgment of sentence became final, Appellant proffered an "an affidavit from his co-defendant indicating Appellant was not present during the crime[.]" ***Id.*** at 4. "The PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, and then denied the petition as untimely on October 5, 2016." ***Id.*** at 2. This Court affirmed that decision, and our Supreme Court denied further review. ***Commonwealth v. Nifas***, 179 A.3d 600 (Pa. Super. 2017) (unpublished memorandum), *appeal denied*, 182 A.3d 987 (Pa. 2018).

On May 7, 2018, Appellant filed *pro se* a third PCRA petition, which underlies the present appeal. ***See*** *Pro Se* PCRA Petition (hereinafter "the Petition"), 5/7/18. Therein, Appellant asserted his discovery of new facts set forth in an affidavit by trial witness Troy Gillis,[1] wherein Gillis stated that he was instructed by the prosecutor to testify falsely at Appellant's 1993 jury trial. ***Id.*** at 3-4. The PCRA court issued notice pursuant to Pa.R.Crim.P. 907

---

[1] ***See*** Troy Gillis Affidavit (hereinafter "Gillis Affidavit"), 4/28/18 (attached to the Petition as Exhibit 1).

of its intent to deny the Petition without a hearing on April 16, 2021. Appellant filed a timely, *pro se* response thereto on April 27, 2021. The PCRA court ultimately denied the Petition by order dated August 2, 2021, and issued an accompanying opinion. On August 10, 2021, Appellant filed a timely, *pro se* notice of appeal. The PCRA court did not order him to file a Pa.R.A.P. 1925(b) statement, and instead immediately reissued its August 2, 2021 opinion as its Rule 1925(a) opinion. PCRA Court Opinion ("PCO"), 8/10/21 (unnumbered pages).

Appellant now presents the following questions for our review:

A) Did the [PCRA] court commit reversible error[], [or] abuse [its] discretion, by alleging that the PCRA Petition w[as] untimely; when [Appellant] w[as] transferred to SC[I]—Coal Township Prison, [o]n March 15[], 2018[,] and received an affidavit from [the] Commonwealth's alleged witness Troy Gillis [o]n April 28[], 2018[,] and filed [the] Petition based upon Troy Gillis'[] affidavit, [o]n May 4th, 2018[,] within 60 days of receiving the affidavit?

B) Did the [PCRA] court [err] when [it] added an element to the **Brady**[2] violations raised in [the Gillis A]ffidavit under 42 Pa.C.S. § 9545(b)(1)(i), alleging [a] "Due Diligence"[ requirement]?

C) Did the [PCRA] court [err in its alternative analysis] by relying upon Troy Gillis'[] original falsified statement, [given] at the age of 15 years old [and without] a guardian present[, and where he had] a criminal history and [was] on probation at the time of giving the falsified statement?

D) Did the trial court [err] by relying upon [the] Commonwealth witnesses['] false testimony at trial that contradicted the[] 911 [c]alls, [s]tatements from other witnesses[,] the [d]escription of the [p]erpetrator[,] [the c]orrupt[ion of] [d]etectives/[p]olice [o]fficers[,] and [the p]rosecutor['s] directing the witnesses at trial to identify [Appellant in] contradict[ion to] the records[,] and

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 3 -

[where the Commonwealth] withheld the true identity of the perpetrator?

E) Did the [PCRA] court commit reversible errors, [or] abuse [its] discretion, as a matter of law, by denying [Appellant]'s PCRA Petition without conducting an [e]videntiary [h]earing pursuant to [Pa.R.Crim.P. 907(2) and Pa.R.Crim.P. 908(A)(2)]?

Appellant's Brief at 3.

Generally,

[w]e review an order denying a collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa. Super. 2015) (cleaned up), *aff'd,* 158 A.3d 618 (Pa. 2017). Where the PCRA court denies a petition without a hearing, "we examine the issues raised in light of the record to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." ***Id.*** (cleaned up).

**A & B**

The first two questions presented for our review concern the timeliness of the Petition, which we must address first because the PCRA statute's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of

the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, the PCRA court determined that the Petition was untimely, and that Appellant failed to prove the applicability of a Section 9545(b)(1) exception. PCO at 2. The court determined that Appellant failed to indicate when he first learned of the information contained in the Gillis Affidavit and, thus, he failed to establish that he timely filed his petition under Section 9545(b)(2). The court also found, for essentially the same reason, that

Appellant failed to establish that he acted with due diligence in obtaining the Gillis Affidavit.

In his first issue, Appellant argues that the PCRA court erred in determining that he failed to satisfy Section 9545(b)(2), and in his second issue, he contends that the court erred in its alternative analysis that he failed to prove due diligence in obtaining the Gillis Affidavit. Appellant avers that he first learned about the new information from the Gillis Affidavit itself, and then promptly filed the Petition within a week, in satisfaction of Section 9545(b)(2). Appellant's Brief at 10. Furthermore, he contends that the PCRA court erred in determining that he failed to exercise due diligence in obtaining the Gillis Affidavit, arguing that the government-interference exception (Section 9545(b)(1)(i)) does not have a due-diligence requirement, and that he acted with due diligence in filing the petition once he learned of the government-interference claim. *Id.* at 11-12.

Notably, "[t]he Commonwealth does not contest the timeliness of [Appellant]'s PCRA petition." Commonwealth's Brief at 10. To the contrary, the Commonwealth contends that the Petition, on its face, satisfied the requirements of Section 9545(b)(2), and that it "has concerns about how a due[-]diligence requirement in this context can be squared with the government's continuing obligation to provide defendants with material exculpatory information…." *Id.* at 10 n.4. We note that:

> In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87…. The Supreme Court subsequently held that the duty to disclose such evidence is applicable **even if there has been no request by the accused**, **United States v. Agurs**, 427 U.S. 97, 107 … (1976), and that the duty may encompass impeachment evidence as well as directly exculpatory evidence, **United States v. Bagley**, 473 U.S. 667, 676–77 … (1985).

**Commonwealth v. Lambert**, 884 A.2d 848, 853–54 (Pa. 2005) (emphasis added).

As to Appellant's ostensible failure to satisfy Section 9545(b)(2), the PCRA court relied exclusively on its interpretation of this Court's holding in **Commonwealth v. Holmes**, 905 A.2d 507 (Pa. Super. 2006), *abrogated on other grounds*, **Bennett**, **supra**. In **Holmes**, the petitioner's facially untimely PCRA petition alleged newly-discovered, exculpatory evidence in the form of an affidavit from a new witness, Fauntleroy. In holding that Holmes failed to satisfy Section 9545(b)(2), this Court reasoned that

> Holmes did not disclose the date Mr. Fauntleroy first informed him that he knew that Holmes did not kill [the victim]. While Holmes' petition was admittedly filed within sixty days[3] of the date of the Fauntleroy affidavit, there is absolutely no indication that Mr. Fauntleroy drafted the affidavit on the same day that he first approached [Holmes] and revealed to him the new information. Thus, Holmes failed to demonstrate the predicate requirement that the instant claim was raised within sixty days of the date it

---

[3] Section "9545(b)(2) originally provided that a petition invoking a timeliness exception was required to be filed within sixty days of the date the claim could first have been presented. However, effective December 24, 2018, the legislature amended Subsection 9545(b)(2)" to increase that time limit to one year. **Commonwealth v. Vinson**, 249 A.3d 1197, 1204 n.5 (Pa. Super. 2021). "The amendment to Subsection 9545(b)(2) only applies to 'claims arising on [December] 24, 2017, or thereafter.'" **Id.** (quoting 42 Pa.C.S. § 9545(b)(2) (comment)).

- 7 -

first could be presented, and, therefore, he did not sustain his burden of pleading and proving that the after-discovered evidence exception permits him to circumvent the statutory time-bar. *See* 42 Pa.C.S.[] § 9545(b)(2)….

*Holmes*, 905 A.2d at 510–11.

With minimal analysis, the PCRA court here concluded that, pursuant to *Holmes*, Appellant failed to demonstrate when he first learned of the new information contained in the Gillis Affidavit. PCO at 1-2. This presumes that Appellant learned of the new information before he received the Gillis Affidavit. However, Appellant did not aver in the Petition that he learned of the information prior to receiving the Gillis Affidavit, nor is such a fact suggested by the affidavit itself. By contrast, in *Holmes*, the new witness, Fauntleroy, stated in his affidavit that he had first approached Holmes with the new information in prison, implying that the affidavit had been prepared at a later time. *Holmes*, 905 A.2d at 510–11. Here, the record simply does not support the PCRA court's assumption that Appellant learned of the information contained in the Gillis Affidavit before he received it. As Appellant filed the petition on May 7, 2018, and the Gillis Affidavit was dated April 28, 2018, and because no other facts relevant to the circumstances surrounding Appellant's receipt of the Gillis Affidavit are discernable from the record because the PCRA court failed to hold a hearing, we must conclude that the PCRA court erred in finding that Appellant failed to prove that he met the deadline imposed by Section 9545(b)(2).

The PCRA court also concluded, with scant analysis in a single sentence, that Appellant failed to demonstrate his exercise of due diligence in obtaining

the new evidence underlying his **Brady** claim.  **See** PCO at 2 ("Furthermore, [Appellant] failed to even allege, much less demonstrate, that Gillis' revelation was previously unascertainable with the exercise of due diligence."). Appellant first complains that the text of the government-interference exception, set forth Section 9545(b)(1)(i), does not contain a due-diligence element, unlike the text of Section 9545(b)(1)(ii).  **Compare** 42 Pa.C.S. § 9545(b)(1)(i) (requiring a petitioner to allege and prove that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States"), **with** 42 Pa.C.S. § 9545(b)(1)(ii) (requiring a petitioner to allege and prove that "the facts upon which the claim is predicated were unknown to the petitioner and **could not have been ascertained by the exercise of due diligence**") (emphasis added).

However, Section 9545(b)(2) applies to all three timeliness exceptions. As this Court has previously explained prior to the amendment of that provision:

> The statutory exceptions to the timeliness requirements of the PCRA are also subject to a separate time limitation and must be filed within sixty (60) days of the time the claim could first have been presented.  **See** 42 Pa.C.S. § 9545(b)(2)[.]  The sixty (60) day time limit related to Section 9545(b)(2) runs from the date the petitioner first learned of the alleged after-discovered facts.  A petitioner must explain when he first learned of the facts underlying his PCRA claims and show that he brought his claim within sixty (60) days thereafter.  "A petitioner fails to satisfy the 60–day requirement of Section 9545(b) if he ... fails to explain

- 9 -

why, with the exercise of due diligence, the claim could not have been **filed** earlier." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (emphasis added).

***Commonwealth v. Williams***, 35 A.3d 44, 53 (Pa. Super. 2011) (some citations omitted or reformatted). Thus, claims raised pursuant to Section 9545(b)(1)(i) are subject to a due diligence requirement by operation of Section 9545(b)(2). Due diligence

> demands the petitioner to take reasonable steps to protect her own interests. ***Commonwealth v. Carr***, 768 A.2d 1164 (Pa. Super. 2001). This standard, however, entails "neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." … ***Burton***, 121 A.3d [at] 1071…. Thus, "the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." ***Id.*** at 1070.

***Commonwealth v. Shiloh***, 170 A.3d 553, 558 (Pa. Super. 2017).

Here, on the face of the Petition, and in the absence of any further fact-finding by the PCRA court (as the court failed to conduct an evidentiary hearing), Appellant learned of the evidence underpinning his ***Brady*** claim (that the prosecutor instructed Gillis to lie at Appellant's trial) through the Gillis Affidavit. For purposes of Section 9545(b)(2), Appellant acted with due diligence in filing his claim given that he filed the Petition less than two weeks after the date of the Gillis Affidavit. As discussed above, the record simply does not support the assumption that Appellant learned of the facts underlying the ***Brady*** accusation before his receipt of the Gillis Affidavit.

The question remains whether Appellant could have discovered this ***Brady***-related accusation by Gillis at an earlier time through the exercise of

due diligence. We conclude that the record, as it exists, cannot support such a finding. There is nothing in the record to suggest that the Commonwealth memorialized the prosecutor's allegedly instructing Gillis to lie, nor would we expect there to be such documentation even if the claim were true. Thus, there is no reason to believe that Appellant could have obtained the information from the Commonwealth had he previously requested it.

The record also does not support the PCRA court's implicit conclusion that Gillis would have shared this information with Appellant had Appellant contacted him at an earlier time. More importantly, the record does not support the court's assumption that due diligence required Appellant, who is both incarcerated and indigent, to continually reach out to Gillis, a Commonwealth witness, over the last several decades, until such time that favorable evidence emerged.[4] Such fishing expeditions are far beyond the "reasonable efforts" required to satisfy the standard of due diligence. **See Shiloh**, **supra**. Consequently, the PCRA court erred when it determined that Appellant failed to act with due diligence with respect to the discovery of the

---

[4] As this Court recently observed, "we would find it untenable and unreasonable to impose a standard on PCRA petitioners that would require them to continually harass a Commonwealth's witness for decades after conviction in order [to] satisfy the due diligence requirement in the event that said witness eventually comes forward to recant or provide new evidence…." **Commonwealth v. Richardson**, No. 1744 EDA 2019, unpublished memorandum at 21 (Pa. Super. filed May 3, 2021); **see also** Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

- 11 -

prosecutorial misconduct claim, as that conclusion is not supported by the limited record before us.

**C & D**

In his third and fourth claims, Appellant contests the PCRA court's alternative analysis on the merits. In his third claim, Appellant focuses on the court's ostensibly unjustified reliance on the credibility of Gillis' initial statement to police implicating Appellant, where Gillis was a minor at the time and claimed he was questioned by police outside the presence of a parent, and without parental consent. **See** Appellant's Brief at 19-21. In his fourth claim, Appellant concentrates on the PCRA court's reliance on the credibility of the other eyewitness who identified Appellant at his trial, arguing that the testimony of each of those witnesses was fraught with credibility issues. **See id.** at 22-29. Essentially, Appellant asserts that, had evidence of prosecutorial misconduct regarding Gillis' testimony been made known to the jury, it could have changed the outcome of his trial, or otherwise undermined confidence in the verdict.

The Commonwealth urges that we affirm the PCRA court's denial of the Petition, arguing that even if the claims in the Gillis affidavit were true, Appellant's **Brady** claim would still fail on the merits. Commonwealth's Brief at 11 (stating that the Petition is meritless because Appellant "cannot show a reasonable probability that the outcome of his trial would be different absent the purported **Brady** violation").

A ***Brady*** violation has occurred when: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant. The evidence must be material, such that there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. The prosecutor's duty to turn over exculpatory or impeachment evidence to the defense exists even in the absence of a defense request for such material … and includes evidence found in the police files of the same government bringing the prosecution. No ***Brady*** violation can occur where the evidence is available to the defense through non-governmental sources, or, with reasonable diligence, the defendant could have discovered the evidence.

***Commonwealth v. Carson***, 913 A.2d 220, 244–45 (Pa. 2006) (citations omitted).

Here, the first ***Brady*** factor turns on the credibility of Gillis' account. If his allegation of prosecutorial misconduct were true, it necessarily follows that the prosecutor withheld the evidence of such misconduct, as the prosecutor who tried Appellant has never come forward with an admission. The second ***Brady*** factor also turns on the credibility of Gillis' accusation. Evidence of the prosecutor's intentional solicitation of false testimony could have been used by the defense to not only question Gillis' trial testimony, but also the testimony of the other eyewitnesses. Finally, under the third ***Brady*** factor, whether Appellant was prejudiced by the absence of evidence of prosecutorial misconduct as alleged by Gillis also turns on the credibility of Gillis' account, weighed against the other evidence supporting Appellant's guilt that would be unaffected by the new information.

In a footnote, the PCRA court stated:

Even if [Appellant] made the requisite showing for purposes of [S]ubsection 9545(b)(1)(ii), no relief would be due, … [as Appellant] failed to demonstrate that Gillis' admission of fabricating trial testimony would have … changed the outcome at trial.  At the outset, Gillis' recantation is of questionable reliability.  ***See Commonwealth v. Henry***, 706 A.2d 313, 363 (Pa. 1997) (noting that recantation testimony is extremely unreliable, particularly when the recantation involves an admission of perjury).  [Appellant] has chronicled Gillis' history of providing contradictory statements as follows: Gillis first gave a statement on November 14, 1989[,] in which he stated that [Appellant] wasn't present at the scene of the crime.  [The Petition] at 7-8.  Gillis then changed his story at trial and testified that he observed [Appellant] at the scene[,] involved in a struggle with the victim.  ***See id.***  Now Gillis, more than two decades later, offers a third version that he himself wasn't present at the scene of the crime.  Even assuming that Gillis' recantation is reliable, it [is] far from exculpatory.  Petitioner argued at trial that he was not present at the scene of the crime and that the witnesses were mistaken, ***[s]ee*** [Trial Court Opinion], 10/31/95[,] at 3-4.  The Commonwealth presented six witnesses, however, [who] placed [Appellant] at the scene of the crime and/or directly implicated him in the shooting.[5]  ***See id.*** at 4.  Thus, given the abundance of other eye[]witnesses, [Appellant] failed to demonstrate that Gillis' non-presence would have likely changed the verdict.

PCO at 2.

Notably, the PCRA court did not directly address Gillis' claim that the prosecutor instructed him to falsely implicate Appellant at trial, and whether the Commonwealth's ostensible failure to divulge such prosecutorial misconduct prejudiced Appellant.  Indeed, in his brief, Appellant focuses not on Gillis' recantation of his prior identification of Appellant, but on the new revelation set forth in the Gillis Affidavit that the prosecutor instructed Gillis

---

[5] The Commonwealth only lists five eyewitnesses who identified Appellant, **including** Gillis and Appellant's codefendant.  Commonwealth's Brief at 5-6, 11.

- 14 -

"to testify to false allegations at the 1993 jury trial…." Appellant's Brief at 14. These are distinct claims. New recantation evidence may or may not implicate **Brady**, as a prosecutor cannot be expected to divulge information of which he or she is unaware. However, new evidence that the prosecutor instructed a witness to lie, if credible, always implicates **Brady**, as a prosecutor who intentionally solicits false testimony and fails to disclose it continues to violate **Brady** until that unethical behavior is admitted. **See U.S. v. Agurs**, 427 U.S. 97, 103 (1976) (stating that the United States Supreme Court "has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury") (footnotes omitted).

The PCRA court's alternative analysis focused solely on Gillis' recantation of his prior testimony, with no mention of the allegation of prosecutorial misconduct. As to the recantation itself, we conclude that Appellant's brief does not set forth a claim based solely on that recantation, and instead focuses on the claim of prosecutorial misconduct. Thus, the PCRA court's alternative analysis is unhelpful to our review.[6]

---

[6] We further note that the PCRA court's failure to address the prosecutorial misconduct claim was not due to any failure on Appellant's part to raise such a claim in the Petition. Therein, Appellant sought an evidentiary hearing based upon the newly-discovered evidence in the Gillis Affidavit as to the allegation contained therein of prosecutorial misconduct. The Petition at 3 ¶ 7. Appellant repeated this specific claim in his response to the PCRA court's Pa.R.Crim.P.
*(Footnote Continued Next Page)*

Although the Commonwealth readily acknowledges in its brief that Appellant raised a *Brady* claim in the Petition, and urges this Court to affirm on the merits of that claim, *see* Commonwealth's Brief at 11, the Commonwealth's subsequent analysis, like that of the PCRA court, is devoid of any discussion of the prosecutorial misconduct alleged, that is, that the prosecutor knowingly encouraged or solicited Gillis' ostensibly false testimony at trial. Instead, the Commonwealth's prejudice analysis focuses only on the potential effect of Gillis' recantation in light of the other eyewitness evidence supporting Appellant's conviction, *see id.* at 11-12.

After reviewing the PCRA court's alternative analysis and the arguments by the Commonwealth, we conclude that the record does not support affirming the denial of the Petition as the record stands. Neither the court nor the Commonwealth addressed the substance of Appellant's *Brady* claim, which concerned evidence of prosecutorial misconduct, not merely the related recantation of Gillis' in-court incrimination of Appellant as the victim's assailant. While the court assumed the recantation was credible in conducting its analysis of whether the third prong of *Brady* was satisfied, it failed to

907 notice of its intent to dismiss the Petition without a hearing. The Rule 907 notice also failed to address Appellant's *Brady* claim based upon prosecutorial misconduct. Additionally, the PCRA court declined to order Appellant to file a statement pursuant to Rule 1925(b), and Appellant did not file one. Thus, at all times during the litigation of the Petition, Appellant maintained that prosecutorial misconduct was the basis for both his invocation of the government-interference exception and as the substance underlying his *Brady* claim.

- 16 -

assess the potential impact of evidence of prosecutorial misconduct on the outcome of Appellant's trial, which is of a wholly different nature.

As our Supreme Court has stated:

> In determining whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." ***Kyles v. Whitley***, 514 U.S. 419, 434… (1995). A "reasonable probability" of a different result is shown when the government's suppression of evidence "undermines confidence in the outcome of the trial." ***Bagley***, ***supra*** at 678…. The United States Supreme Court has made clear that ***Bagley***'s materiality standard is not a sufficiency of the evidence test. ***Kyles***, ***supra*** at 434…. A ***Brady*** violation is established "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ***Kyles***, ***supra*** at 435…. Importantly, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." ***Commonwealth v. McGill***, … 832 A.2d 1014, 1019 ([Pa.] 2003)…. "[I]n order to be entitled to a new trial for failure to disclose evidence affecting a witness'[s] credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." ***Commonwealth v. Johnson***, … 727 A.2d 1089, 1094 ([Pa.] 1999). In assessing the significance of the evidence withheld, a reviewing court must bear in mind that not every item of the prosecution's case would necessarily have been directly undercut had the ***Brady*** evidence been disclosed. ***Kyles***, ***supra*** at 451….

***Commonwealth v. Weiss***, 986 A.2d 808, 815 (Pa. 2009).

Credible evidence of prosecutorial misconduct, particularly where that misconduct involves knowingly proffering false, eyewitness testimony in a murder trial, is of such a nature that it naturally undermines confidence in a verdict. ***See Agurs***, ***supra***. The evidence in this case was solely dependent

on the credibility of several witnesses,[7] all of whom may have been viewed with more suspicion had credible evidence of prosecutorial misconduct of this nature been admitted before the jury. Thus, again, the success or failure of Appellant's **Brady** claim turns on the question of the credibility of the allegations contained in the Gillis Affidavit. Because that matter was not resolved by the PCRA court, this Court cannot affirm its denial of the Petition, but nor can we reverse it.

**E**

In his final claim, Appellant argues that he was entitled to an evidentiary hearing. For the reasons discussed above, we agree. There were genuine issues of material fact left unresolved, namely, the credibility of the claims in the Gillis Affidavit, that were critical to merit of the **Brady** claim set forth in the Petition. Accordingly, we vacate the order denying the Petition, and remand for an evidentiary hearing where Appellant can call Gillis to testify, subject to cross-examination by the Commonwealth.[8] We also direct the court

---

[7] Neither the PCRA court nor the Commonwealth referenced any physical or circumstantial evidence, scientific or otherwise, that corroborated the witnesses' testimony in their respective analyses, and Appellant alleges that each witness had questionable motives or credibility issues. While the testimony of these remaining witnesses comprises more than sufficient evidence of Appellant's guilt, **see Kyles**, **supra**, that is not enough to defeat a **Brady** claim.

[8] Although we have determined, in part, that the PCRA court erred in denying the Petition without a hearing, based on its determination that Appellant failed to meet an exception to the PCRA's timeliness requirements, the PCRA court is not precluded from revisiting that issue on remand if additional evidence *(Footnote Continued Next Page)*

to discern if Appellant is unable to afford or otherwise obtain counsel and, if so, to appoint an attorney to represent him at the evidentiary hearing. **See** Pa.R.Crim.P. 904(D) ("On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 908, the judge shall appoint counsel to represent the defendant.").

Order **vacated**. Case **remanded** for an evidentiary hearing. Jurisdiction **relinquished**.

Judge Murray joins this memorandum.

President Judge Emeritus Stevens concurs in the result

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2022

---

emerges at the hearing that would call into question Appellant's ability to meet an exception.